For the appellant is William Davis, you are he, sir? Yes. And for the appellee is Linda Susan McClain, you are she? Yes. Okay, Mr. Davis, you may proceed. Thank you. May I please report? Counsel. Counsel.  Your Honor, in this case, it's a good morning. The issues presented are two-fold. Whether the court was against the manifest weight of the evidence for the court to find that Mr. Hudson, the father of B.H., was an unfit parent, and then second, after finding that in the trial court, whether it was against the manifest weight of the evidence to find it was in the best interest of B.H. for parental heritage to be terminated. Your Honor, as to the fitness issue, there are two sub-issues on that. Reasonable efforts to correct the conditions that were the basis of the child's removal, and reasonable progress towards return of the child. Your Honor, I would argue that the trial court's finding that he did not make reasonable efforts to correct the conditions was against the manifest weight of the evidence. As shown through the testimony, Mr. Hudson did complete a number of issues, or a number of the terms of the service plan. And the key with the reasonable efforts is that it's based upon a subjective standard, and it looks at the intents and the efforts, not the successes of those efforts. It's obviously presented in the evidence that he did not succeed in all issues of the service plan, succeed in everything that he was to put his mind and effort towards, but he did have those efforts, and he did have those intents. He attended every visitation throughout the nine-month period, and on either side of that as well. He brought food and candy, clothing, toys to the visitations. He completed not one, but two parenting classes. Now, while the issue at the trial court, and as presented through testimony by DCFS caseworker, was that he didn't exhibit those during the visitation, it was noted in the trial court that the child, VH, is a special needs child, and that the parenting classes geared towards the ordinary, or the regular child. Clearly not for a special needs child, a child which had, I believe, autism, sensory issues, things of that such. And that any sort of training and education with regards to those special needs were only obtained through the foster parent during those, throughout most of the period of this nine-month period, two-hour monthly visitations, for the, I believe, second half of that period, approximately one-hour monthly meetings. It should also be noted that, as shown through evidence, during many of these scheduled visitations, they are scheduled at times the child was in nap. The child was supposed to be taking its nap, but it was a regularly scheduled nap time. It can become very difficult, especially with a special needs child. Issues of housing. He was able to obtain housing through family with, as he testified, a nephew and a girlfriend and their children in a five-bedroom home with a full basement. He did obtain housing. The key issue, and I'm sure the court will ask questions about this for this as well as for the reasonable progress, is the issue of his drug treatment and his drug use. He is a lifelong user, was at the time a lifelong user of marijuana, cannabis. He was addicted to it. He was ordered to undergo treatment with regards to that. He attempted to. He had two dirty, what are called dirty drops, dirty urinalysis drops for cannabis use. And he was terminated from Triangle Center for those dirty drops. He was given, I believe, one warning after the first drop and then terminated after the second. Your Honor, the key with that is that he did intend to do that. Is that what? He did intend. He put out the effort to these counseling with the drug counseling. The problem is whether that counseling was enough. Clearly a person who's used for decades marijuana needs not an hour a week or two hours a week. So therefore what, counsel? How old is this child? Pardon? How old is this child? Presently four years old. So wait another two or four years while your client gets his act together? Your Honor, I believe that the evidence in this showed that he was offered inpatient counseling at a time that he was not able to do it due to family needs. And I think that... What were the family needs? I believe it was his brother had diabetes, had major health issues. He had to be attended to by Mr. Hudson. He had to be taken by Mr. Hudson to receive treatment until his death in October of 2010. Mr. Hudson was offered inpatient counseling at a time that he had to take care of his family. He had to take care of a family member that was severely ill. After that it was never offered again. It was never presented to him again for inpatient counseling, which would have or could have helped him kick this long-term addiction. And I think that should be taken into effect, Your Honors. So where are we now? With regards to, I'm not... Is he, are you suggesting that that family situation has now been resolved and he is in treatment or will be undergoing treatment or what? Where is he? Is he still the same addicted guy that he always was? Your Honor, one can't speak to that, but I think also... What does the record show? I think the record shows that he was not able to enter into the treatment during that nine-month period. That's what our focus is on the reasonable efforts issue is that August 5th to May 5th... What about reasonable progress? On the reasonable progress, Your Honor, I would argue that he did also make reasonable progress. He completed a number of those tests... So he's ready to take the kid back now? Your Honor, I believe that... Isn't that the standard, counsel? Yes, Your Honor, that is the standard. So has your client met it? Your Honor, I think the standard is whether he's able to take the child, to parent the child in the near future. And I think that having undergone two parenting classes, yes, he still had this drug issue. But having taken two parenting classes, he would have been available in the near future. He was attending the visitations regularly, building a bond and relationship with BH. I believe that the evidence showed that in the near future, he could have. He very well could have. There are definitely the issues that are presented with drug use, whether or not he's able to get the sufficient treatment. There are definitely those issues. But in the near future, and that's the way the case law has shown on it, I think it's possible. I think the court...  You used the wrong word, Your Honor. I apologize. It will happen. We have every reason to look at this. Yeah, sure. In the near future, the circumstances surrounding his deficiencies in the past, which resulted in this child being removed from his home, will be corrected and the child can be returned. Isn't that what we're talking about here? That is, Your Honor. And I think it's worth to note that, as the record shows, the child was taken from the mother. It was by no... Yes, the drug use was known of the father at the time, but the main fault was in the mother. The child was born very, very early, very early in gestation. I believe in the late 20s, if my memory serves correctly. So in essence, the issue is not so far as correcting the conditions with the father, but more with the mother. Now, obviously, conditions need to be corrected with the father, with the drug use, with the parenting classes. And in some respects, this goes more to the best interest issue at the very end, which I'll just go ahead and argue now. Your Honor, the best interest hearing was held last November. It obviously took into consideration the facts and evidence presented last June at the fitness hearing. And in the best interest of the child, I think the trial court found against the manifest way of the evidence that it was in BH's best interest to terminate parental rights. Again, visits were still going well. While the DCFS caseworker at the point testified otherwise, testified that she had not seen much of a bond. I believe the phrase was routine or something to that effect. Mr. Hudson's testimony was to the opposite. I believe he presented photos on his cell phone to show to the trial court, and the court reviewed those. The child's mother, Ms. Frazier, who also attended these, testified, I believe, that she was almost jealous of the interactions between the child and the father. Almost jealous of their bond and how they played together. Also testifying that they brought the toys and treats and balloons. But, Your Honor, so far as the best interest into the court's last question, I think that the, and counsel argued this at the trial level, is that the best interest is almost a little bit premature to say, no, it's against the best interest. We can give Mr. Hudson a little bit more time, was obviously the trial court's, or the trial counsel's argument. And I think in some respects that's accurate. Mr. Hudson was making great progress. He had maintained, he was building a relationship, despite the fact that his visitation was being less, lessened and lessened. He was able to maintain a relationship with BH, that it would be in the child's best interest not to terminate the parental rights, actually. Where is the child now? I believe he's still with the Westcoats or Westcott family. The adoptive placement, he's still with them at this point, I believe. Your Honor, I believe it's worth noting, and Mr. Hudson testified this at the best interest hearing, and this sort of does go back to the issue of the condition that caused the removal of the child. He testified to it, trial counsel argued about it. It was that Mr. Hudson had three prior children with no DCFS involved. So on the issue of correcting those conditions, and in the best interest as well. Yes, this trial has special needs. That's something that should be considered, but it's not the determining factor. Where are those three children? I believe they're older, and I'm not positive at this time. I'm not sure if the trial record played that out. Your client is 50? Yes, Your Honor, I believe so. So there's no evidence that he, about what care he provided for them, or whether he was united with them, or bonded with them, or lived with their parent, lived with the children's mother, or anything like that. Just that he had three, and no prior problems with DCFS. I believe that's accurate as to what the evidence was at the trial. What is the evidence regarding how one bonds with or attaches to a child with autism? I mean, special needs covers, that's a pretty broad spectrum. Here we're talking about a child who, if so diagnosed, one of the specific difficulties is forming an attachment with anyone, let alone someone that they only see periodically. Is there any testimony about that, other than what he says, and what the DCFS worker says? There is not additional testimony as to that. No, obviously, expert testimony as to an autistic child would need X, Y, and Z. These are the A, B, and C are the difficulties of bonding with a child. I think what the court has to rely upon is the testimony of the individuals there. And it's even worth to note that, so far as the bonding, I believe even at the fitness hearing, the caseworker at that point, who was a different caseworker at the best interest hearing, testified, I believe, somewhat, not glowingly, but did say that he brought stuff, he was interacting, appropriate play. And as this new caseworker came on, and she felt very differently, for whatever reasons. I think that's a good question, though. The issue of what's necessary to bond to an autistic child, obviously that's more of a special need than possibly other issues. And what the evidence shows, through the testimony of Mr. Hudson and Ms. Frazier, is that there was a bond. They apparently were able to overcome that issue. That very severe issue, as the court noted, throughout the visitations. And I do believe that the trial court, or I would ask that the court find that the trial court's finding was against the manifest weight of the evidence, and overrule the trial court on both best interests, as well as the fitness findings. Thank you, counsel. Ms. McClain? May it please the court? Counsel? The state maintains that the trial court's finding that Respondent Father was unfit was not against the manifest weight of the evidence. The trial court found Respondent Father unfit on two grounds, only one is needed to uphold the court's finding. I, that he was found unfit on reasonable effort and reasonable progress. As for reasonable efforts, the nine-month period that was examined was August 5 of 2010 to May 5 of 2011. The condition alleged in the petition, which had to be corrected for reasonable efforts, was Respondent Father's continued drug use. The caseworker testified that Respondent Father had been evaluated twice, and his addiction had been found not to be severe enough to require inpatient treatment. The caseworker explained the service plan to Respondent Father, told him he needed to abstain from drug use, and that his case would not go forward until he had a clean drop. In response, he said he did not want to stop smoking marijuana. He had used marijuana for most of his life. He continued to have monthly dirty drops for nine months. In addition, he was terminated from outpatient treatment because of two dirty drops. He had been given a warning for the first dirty drop, and then he was terminated after the second one. And the caseworker visited his home in January of 2011,  Respondent Father's entire argument is based on disputing the expert's assessment of the severity of his addiction. The caseworker had to rely on the expert's assessment, so should the Respondent and this Court. Therefore, the State is maintaining that the evidence was sufficient on reasonable efforts. Is there testimony about the Respondent Father's employment, driver's license, lifestyle aside from the marijuana use? Yeah, I believe he was self-employed, like a handyman type of thing, and he accepted cash and had no paychecks to verify his employment. So he never did verify any employment. Was he on any kind of public assistance, or was he able to support himself? I believe there might have been some testimony about public assistance, but I can't recall what it was. I'm not sure if it was food stamps. This was a joint hearing on termination with the mother of Yolanda Frazier? Yes. And the trial court did not terminate her parental rights? Yeah, she had some mental health issues, and they were going to try a program that would address both her mental health and drug use at the same time. Her mental health and drug usage, you said? Yeah, she had a dual problem. So what did the trial court say? Literally at this point, the court isn't going to terminate parental rights? Or what was that? Yeah, I believe they were going to not terminate parental rights because they were going to give that program a chance to see if it worked. But in her case, it wasn't just a question of best interest. She was filed at that point, or the court did not agree that the state had proved that she was unfit at that point. Is that correct? I am not positive about that. But in any event, her parental rights were not terminated? That's correct. So given that situation, let me ask you this one. What does the record show Frazier's relationship currently is, if any, with Mr. Hudson? I know she testified at the termination hearing, and I think that in 2012 she had called the police on him for being abusive. But I'm not positive. I'm hesitant to say one way or the other because I'm not clearly recalling. Are Frazier and Hudson at all still together? I'm not positive. Does that matter? In the sense of what if, since the trial court determined that Frazier's parental rights weren't going to be terminated, why is it important or desirable at this point that Mr. Hudson's parental rights be terminated? I think that you have to go with the, I mean, it's clear that he did not make reasonable progress or reasonable efforts. He's still a drug addict. Well, that deals with the question of whether or not the basis of his unfitness was proved. But why is it in his best interest to have his parental rights terminated if Frazier's parental rights have not been terminated at this point? I do think there's lots of cases where one parent's rights are terminated but the other ones are not. And I think in this case he's definitely not going to be, he's not a viable parent. He's not going to be turning his life around in the near future. And it was in the best interest of the child to have the stability of the foster parents acting as a parent for him. He's been in the same placement for three years. It's a specialty placement. The child is making progress. They're willing to adopt him. There's a bond between the child and the foster parents. On the other hand, the attachment between the father and the minor was described as a monthly routine, and he had never asked for an increase in his fitness. So I think in sum, his rights should have been terminated and they were. It was in the child's best interest. Anything further? Pardon me? Anything further? No. Okay. Thank you very much. Mr. Davis? Thank you, Your Honors. I'll keep this brief. I do want to hit on a couple of things the Court raised during opposing counsel's argument that I think are actually quite interesting in this case, and that is the juxtaposition of Mr. Hudson's case to Ms. Frazier's case. The Court asked about or made note that they did not terminate the parental rights of Ms. Frazier. The Court found that she had met the three requirements of the petition, that she had maintained a reasonable degree of interest, she had made reasonable efforts, and she had made reasonable progress at the fitness hearing last June. Of interest at that point, and I guess this is also answering the Court's question about what the evidence is about whether they lived together, on the issue of stable housing, as I've already described in the previous argument, Mr. Hudson had maintained housing with a family member. I believe the address is on Oakdale. I'm not sure if I said that on the original argument. At the same time, during the nine-month period, the evidence was that Ms. Frazier was not able to maintain stable housing and had actually lived at a couple points at Salvation Army here in town. So at least from the evidence of the nine-month period... What is the relationship between Hudson and Frazier according to this record? According to the record, they, I believe, appeared to basically just be parents that don't live with one another, I believe is what the record shows. Do they have any involvement at all with each other? Well, and that's sort of the tricky thing, is that the record also shows that they attended visitations together. Whether... The record shows that at least during the nine-month period, they did not live together. I don't believe there's any testimony at the best interest hearing as to whether they resided with one another. There is testimony that they attended visitation together, but the nature and level of their personal involvement with one another is a little bit vaguer, admittedly. But I think the looking at both of the situations is an interesting thing because she did not maintain housing. Mr. Hudson, at the fitness issue, I believe the evidence, but I think the DCFS caseworker disagreed, maintained housing with family with multiple bedrooms. He had undergone parenting classes. They had both attended all the visitations. She obviously had mental health issues, so she had a little bit more than just the drug issue. I believe she also did have drug abuse issues. So there's an adoptive family ready and willing to adopt this child who has all these difficulties and problems? I believe the testimony was at the best interest from the DCFS caseworker that they were familiar with. So if we were to reverse the best interest finding regarding your client, where does that leave this case? What then happens? I believe what happens then, Your Honor, is it goes back to the trial court, and Mr. Hudson can work on that, continue on that progress. I said the best interest findings. I didn't say the findings that he was unfit. Yes, Your Honor. I believe then the trial court would have to look at what's happened since. In the now four to five months is the best interest finding and see where Mr. Hudson is, see where BH is, and see how the relationship has continued. Though I'm not positive if visitation is still in progress, obviously, since the court's finding. Ms. McClain indicated that the circumstances with regard to Frazier were such that the trial court thought she was not unfit at this time because the court wanted to give her further opportunity with regard to addressing both her drug problems and her mental health problems. Is she correct in that? I believe so. That's my understanding. That's my recollection of the record. I obviously was leafing through it rather frantically, as the court probably saw, which does raise the question, why not give Mr. Hudson a little bit more time? And when he had slightly less of an issue, as he did not also have a mental health counseling issue as well. But I believe that juxtaposition is informative and could be helpful to this court in looking at specifically the fitness to be a parent issue and obviously to a respect to the best interest as well. Well, let's assume the following. Let's assume that the court, out of a generosity of spirit, decides that Ms. Frazier is going to be given a further opportunity and that doesn't work out, as is often the case. And there's a subsequent petition filed to terminate her parental rights, and the court now finds enough's enough. Forget about you, Ms. Frazier. Where does that leave your client? Your Honor, I'll answer it as quickly as I can as the red light's on. It's okay, counsel. I have questions. You just go ahead. Yes, Your Honor. I believe that, and depending on how this court rules, I believe if the state wishes to file another petition, it is within the state's power to do so. I'm not sure, obviously, the stance they are with Ms. Frazier at this point, offhand, but I think in some respects, at some point in this process, between the fitness issue and the best interest, there's almost been a split in some regards with the cases. Well, they're two separate matters. Yes, obviously. But I think what I'm, I guess, arguing is, because we've had to go down the road of the best interest for Mr. Hudson but not for Ms. Frazier, we've had a little bit more testimony as to Mr. Hudson's issue,  but we have very little with Ms. Frazier. And I think that's where it's sort of difficult to be able to answer that question, Your Honor, and I apologize. Okay. Thank you, counsel. We'll take this matter under advisement at the end of recess.